JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

CHRISTINE Y. WONG (NYBN 3988607)
Assistant United States Attorney

1301 Clay Street, Suite 340-S
Oakland, California 94612-5217
Telephone: (510) 637-3717
Facsimile: (510) 637-3724
E-Mail: Christine.Wong@usdoj.gov




UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| IN THE MATTER OF THE THE EXTRADITION OF HELEN YUEN-LAN LAU | No. CR 08-90359 MISC (WDB)<br><br>UNITED STATES' MEMORANDUM RE: EXTRADITION PROCEEDINGS |
| --- | --- |

**INTRODUCTION**

This case involves the request by the Government of the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") to the United States for the extradition of Helen Yuen-Lan Lau. The charges for which Hong Kong seeks extradition are theft and fraud.

Helen Yuen-Lan Lau was arrested on August 12, 2008, pursuant to a complaint and arrest warrant issued in the Northern District of California by U.S. Magistrate Judge Maria-Elena James on July 25, 2008, in accordance with 18 U.S.C. § 3184, at the request of the Government of Hong Kong pursuant to the Extradition Agreement between the United States and Hong Kong. In this matter, the United States acts on behalf of the Hong Kong government.

Hong Kong has submitted a formal request for surrender, supported by appropriate documents, to the Department of State, as required by the Extradition Agreement.

By statute, this Court must hold a hearing to consider the evidence of criminality





presented by Hong Kong and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. If the court finds the fugitive extraditable, it certifies that conclusion to the Secretary of State, who decides whether to surrender him. Because the law regulating extradition differs from ordinary criminal or civil proceedings so much as to be classed sui generis, the government offers this memorandum as a guide to the nature of the hearing and a description of its distinctive features.

## DISCUSSION

### I. NATURE OF THE HEARING.

#### A. *Purpose of Hearing.*

The purpose of the hearing required by 18 U.S.C. § 3184 is to determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. If the court decides that the elements necessary for extradition are present, it incorporates these determinations in factual findings and conclusions of law styled as a "certification of extraditability," which is forwarded to the Department of State for disposition by the Secretary of State. The decision to surrender the fugitive rests with the Secretary.

#### B. *Elements Necessary for Extradition.*

There are several formulations of the requirements for extradition. An early Supreme Court opinion held that a determination of extraditability was proper if: (1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the treaties; and (5) there was competent legal evidence for the decision. Ornelas v. Ruiz, 161 U.S. 502 (1896); see also Bingham v. Bradley, 241 U.S. 511 (1916); McNamara v. Henkel, 226 U.S. 520 (1913); Zanazanian v. United States, 729 F.2d 624 (9th Cir. 1980). Another formula calls for a determination that: (1) there are criminal charges pending in the requesting state; (2) the

charges are included under the treaty as extraditable offenses; and (3) there is probable cause to believe that a crime was committed and that the person before the court committed it. United States v. Barr, 619 F. Supp. 1068, 1070 (E.D. Pa. 1985). This memorandum briefly discusses these elements, drawing on both Ornelas and Barr.

1. Authority of the judicial officer.

The statute, 18 U.S.C. § 3184, authorizes a broad class of judicial officers to hear extradition cases. The authority of the judicial officer to hold an extradition hearing was a more contentious issue in the law's early days when cases were brought by private counsel before all manner of courts. Federal judges are clearly authorized by the statute to hear and decide extradition cases; the statute provides that magistrate judges may do so if permitted by rule of their court. See Ward v. Rutherford, 921 F.2d 286 (D.C. Cir. 1990) (Ginsburg, J.) (rejecting constitutional challenge to magistrate's authority); see also Crim. L.R. 7-1(b)(13).

2. Jurisdiction over the fugitive.

Although the Supreme Court included personal jurisdiction as an essential element for reasons of analytic completeness, the question of jurisdiction has not been a decisive issue in an extradition case in modern times. If the fugitive is before the court, the court has personal jurisdiction. See In re Pazienza, 619 F. Supp. 611 (S.D.N.Y. 1985).

3. Treaty in full force and effect.

The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances in which a treaty is in force between the requesting state and the requested state, and several cases have so held. See, e.g., Argento v. Horn, 241 F.2d 258 (6th Cir. 1957). Here, the Extradition Treaty between the United States and Hong Kong is in full force and effect.

4. Charges or conviction in the requesting state.

The documents submitted by the requesting state will establish that the fugitive has been charged or convicted. Because criminal procedures under other systems differ from ours, the charging document will not necessarily be an indictment or a criminal

information. In many countries, the charges are reflected in the arrest warrant. The court should not be drawn into a technical dispute over the significance of the term "charging document." Matter of Assarsson, 687 F.2d 1157 (7th Cir. 1982).

5. Crime covered by the treaty.

Extradition treaties create an obligation to surrender fugitives under the circumstances defined in the treaty. The treaty may specify that extradition can be had for particular offenses that are listed in the treaty, for any serious offense that is punishable in both the requesting and requested state, for some combination of those two categories, or for an even broader range of offenses. The court must determine whether the crime for which extradition is requested is among the offenses specified in the treaty as giving rise to an obligation to extradite.

Dual criminality is not required per se for extradition; it need be found only if the treaty so requires. Factor v. Laubenheimer, 290 U.S. 276 (1933); In re Assarsson, 635 F.2d 1237 (7th Cir. 1980). A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours. Kelly v. Griffin, 241 U.S. 6, 15 (1916). If a dual criminality analysis is required, the court should examine the facts and decide whether the fugitive's conduct would have been criminal under our law. The Supreme Court noted in Collins v. Loisel, 259 U.S. 309 (1922), that:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added); accord Messina v. United States, 728 F.2d 77 (2d Cir. 1984); Cucuzzella v. Keliikoa, 638 F.2d 105, 108 (9th Cir. 1981); United States v. Stockinger, 269 F.2d 681, 687 (2d Cir. 1959); Di Stefano v. Moore, 46 F.2d 308 (E.D.N.Y.), aff'd, 46 F. 2d 310 (2d Cir. 1930), cert. denied, 283 U.S. 830 (1931). The court's analysis of the question of dual criminality is subject to the general requirement that it "approach challenges to extradition with a view toward finding the offense within

the treaty." McElvy v. Civiletti, 523 F. Supp. 42, 48 (S.D.Fla. 1981).

In comparing the foreign offense with U.S. law to decide the question of dual criminality, the court may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. Cucuzzella v. Keliikoa, 638 F.2d 105 (9th Cir. 1981).

6. Competent legal evidence.

This is the familiar requirement of probable cause to believe that a crime was committed and that the person before the court committed it. The standard of proof in extradition proceedings is that of probable cause as defined in federal law. Sindona v. Grant, 619 F.2d 167 (2d Cir. 1980). This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. Coleman v. Burnett, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in Collins, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. 309, 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a final trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

Peroff v. Hylton, 542 F.2d 1247, 1249 (4th Cir. 1976.); see also Fernandez v. Phillips, 268 U.S. 311, 312 (1925); United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730–31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); Jimenez v. Aristeguieta, 311 F.2d 547, 562 (5th Cir. 1962); Merino v. United States Marshal, 326 F.2d 5, 11 (9th Cir. 1963), cert. denied, 397 U.S. 872 (1964); In re Ryan, 360 F. Supp. 270, 273 (E.D.N.Y.), aff'd, 478 F.2d 1397 (2d Cir. 1973).

C. *Role of the Judicial Officer.*

In determining the extraditability of a fugitive, the court considers the evidence presented on behalf of the requesting state and determines whether the elements defined in the treaty and the case law cited above have been established. If any explanatory evidence or evidence in support of an affirmative defense specified in the treaty is offered, the court rules on it. The court makes written findings of fact and conclusions of law as to each of the elements, including separate findings for each offense as to which extradition is sought. Shapiro v. Ferrandina, 478 F.2d 894 (2d Cir. 1973) (separate findings). If the fugitive is determined to be extraditable, he or she is committed to the custody of the United States Marshal to await the determination by the Secretary of State and transfer to the representatives of the requesting state. The court's Certification of Extraditability is provided to the Secretary of State together with a copy of any evidence presented on behalf of the fugitive. 18 U.S.C. § 3184.

**II. DISTINCTIVE FEATURES OF THE LAW OF EXTRADITION.**

A. *Extradition Hearing Not a Criminal Proceeding.*

An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable cause, not guilt or innocence. Neely v. Henkel, 180 U.S. 109 (1901); Benson v. McMahon, 127 U.S. 457, 463 (1888); Simmons v. Braun, 627 F.2d 635 (2d Cir. 1980); United States ex rel. Oppenheim v. Hecht, 16 F.2d 955 (2d Cir. 1927). Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial at common law. Charlton v. Kelly, 229 U.S. 447, 461 (1931); Glucksman v. Henkel, 221 U.S. 508, 512 (1911); United States v. Stockinger, 269 F.2d 681, 687 (2d Cir.), cert. denied, 361 U.S. 913 (1959). For example, the fugitive has no right to discovery or even to cross-examination if any witnesses testify at the hearing (Messina v. United States, 728 F.2d 77 (2d Cir. 1984)); his or her right to present evidence is severely limited (Messina, supra, and see Sections II.D and E, infra); and the Sixth Amendment's guarantee to a speedy trial, being limited by its terms to criminal prosecutions, does not pertain to extradition proceedings (Jhirad v. Ferrandina, 536 F.2d 478, 485 n.9 (2d Cir. 1976)).

B. *Inapplicability of Federal Rules of Criminal Procedure and Evidence.*

The Federal Rules of Criminal Procedure do not apply to extradition proceedings. Federal Rule of Criminal Procedure 1(a)(5)(A) states: "Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive." The Federal Rules of Evidence are also inapplicable. Federal Rule of Evidence 1101(d)(3) provides that "[t]he rules (other than with respect to privileges) do not apply . . . [to p]roceedings for extradition or rendition." See also Melia v. United States, 667 F.2d 300 (2d Cir. 1981); Greci v. Birknes, 527 F.2d 956 (1st Cir. 1976); Merino v. United States Marshal, 326 F.2d 5, 12 (9th Cir. 1963).

C. *Admissibility of Evidence.*

"Unique rules of wide latitude govern reception of evidence in Section 3184 hearings." Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969) (citation omitted). Among these unique rules are the following:

1. Admissibility of hearsay.

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability. Collins v. Loisel, 259 U.S. 309, 317 (1922); O'Brien v. Rozman, 554 F.2d 780, 783 (6th Cir. 1977); In re David, 395 F. Supp. 803, 806 (E.D. Ill. 1975); United States ex rel. Eatessami v. Marasco, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). Extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." Bingham v. Bradley, 241 U.S. 511, 517 (1916). Thus, a finding of extraditability may be and typically is based entirely on documentary evidence. Shapiro, 478 F.2d at 902–03; O'Brien, 554 F.2d at 783; In re Edmonson, 352 F. Supp. 22, 24 (D. Minn. 1972).

2. Certification of documents.

In Cucuzzella v. Keliikoa, 638 F.2d 105 (9th Cir. 1981), the court held that 18 U.S.C. § 3190 governs the admissibility of statements submitted by the requesting state and is satisfied by a certification that accords with the terms of the statute. See also Collins v. Loisel, 259 U.S. 309 (1922). Alternatively, documents may be received in

evidence if they are certified in accordance with the terms of the treaty. Emami v. United States District Court, 834 F.2d 1444 (9th Cir. 1987).

D. *Limitations on Fugitive's Evidence.*

A fugitive's right to controvert the evidence introduced against him is "limited to testimony which explains rather than contradicts the demanding country's proof." Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir. 1978). The district court in Matter of Sindona, 450 F. Supp. 672 (S.D.N.Y. 1978), aff'd, 619 F.2d 167 (2d Cir. 1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting 'explanatory evidence,' the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations. The Supreme Court decisions are Collins v. Loisel, 259 U.S. 309, 316, 42 S. Ct. 469, 66 L.Ed. 956 (1922), and Charlton v. Kelly, 229 U.S. 447, 461, 33 S. Ct. 945, 57 L.Ed. 1274 (1913). The district court opinion is In re Wadge, 15 F. 864, 866 (S.D.N.Y 1883) in which the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings:
>
> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.

Matter of Sindona, 450 F. Supp at 685. The extent to which the fugitive may offer explanatory proof is largely within the discretion of the judicial officer. Hooker v. Klein,

573 F.2d at 1369; United States ex rel Petrushansky v. Marasco, 325 F.2d 562, 567 (2d Cir. 1963), cert. denied, 376 U.S. 952 (1964) (and cases cited therein). However, some matters are clearly contradictory and thus impermissible. See Section II.E, infra.

E. *Impermissible Defenses.*

Defenses against extradition which "savor of technicality" should be rejected by a court as they are peculiarly inappropriate in dealings with a foreign nation. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender. Glucksman v. Henkel, 221 U.S. 508, 513–14 (1910); accord Bingham v. Bradley, 241 U.S. 511, 517 (1916); United States ex rel. Bloomfield v. Gengler, 507 F.2d 925, 927–1024 (2d Cir. 1974); Shapiro, 478 F.2d at 904; In re Edmonson, 352 F. Supp. 22, 24 (D. Minn. 1972).

1. Conflicting evidence.

The fugitive's grounds for opposition to the extradition request are severely circumscribed. Hooker v. Klein, 573 F.2d 1360, 1368 (9th Cir.), cert. denied, 439 U.S. 932 (1978); First National City Bank of New York v. Aristeguieta, 387 F.2d 219, 222 (2d Cir. 1960); In Re Shapiro, 352 F. Supp. 641, 645 (S.D.N.Y. 1973). He may not introduce evidence which: conflicts with the evidence submitted on behalf of the demanding state (Collins v. Loisel, 259 U.S. 309, 315–17 (1922)); establishes an alibi (Abu Eain v. Adams, 529 F. Supp 685 (N.D. Ill. 1980); sets up an insanity defense (Hooker v. Klein, supra); or impeaches the credibility of the demanding country's witnesses (In re Locatelli, 468 F. Supp. 568 (S.D.N.Y. 1979)). Cf. Mainero v. Gregg, 164 F.3d 1199, 1207 n.7 (9th Cir. 1999) (declining to reach question of whether recantation evidence is admissible in extradition hearing; affirming order of extradition despite presentation of recantations, noting that "the very purpose of extradition treaties is 'to obviate the necessity of confronting the accused with the witnesses against him'"). He is limited to introducing explanatory evidence. See Section II.D, supra.

2. Trial in demanding country on other charges.

A fugitive's contention that he or she will be tried in the extraditing country for

crimes other than those for which extradition will be granted, or that surrender is being requested for political offenses, must be rejected as baseless, without merit, or beyond the responsibility of the court, for the United States Government does not presume that the demanding government will seek a trial in violation of a treaty. Bingham v. Bradley, 241 U.S. 511, 514 (1916). As the district court noted in Gallina v. Fraser, 177 F. Supp. 857, 867 (D. Conn. 1959): "the Secretary of State of the United States would not authorize the surrender of a fugitive . . . to be punished for non-extraditable crimes, and . . . any extradition would be so conditioned as to negate this possibility."

3. Motivation of demanding country: rule of non-inquiry.

Should a fugitive suggest that a court look behind the extradition request to the motives of the government of the demanding country, the answer may be found in In re Lincoln, 228 F. 70, 74 (E.D.N.Y. 1915):

> It is not a part of the court proceedings nor of the hearing upon the charge of the crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith. Such matters should be left to the Department of State . . . .

In In re Gonzalez, the court further noted that 18 U.S.C. § 3184 gives it no authority to inquire into such matters. In re Gonzalez, 217 F. Supp. 717, 722, n.15 (S.D.N.Y. 1963); accord In re Extradition of Singh, 123 F.R.D. 127, 129–37 (D.N.J. 1987) (citing cases on doctrine of non-inquiry). In Ramos v. Diaz, 179 F. Supp. 459, 463 (S.D. Fla. 1959), the court clearly stated that the motive of the demanding government in an extradition proceeding is not controlling; the circumstances surrounding the offense when it occurred are dispositive. See also In Re Locatelli, 468 F. Supp. 568, 575 (S.D.N.Y. 1979).

4. Lack of U.S. constitutional protections abroad.

Questions concerning the judicial procedure in the requesting state and the treatment that might be accorded the fugitive after extradition are not proper matters for consideration by the certifying judicial, according to what the Second Circuit refers to as "substantial authority." Ahmad v. Wigen, 910 F.2d 1063, 1072–73 (2d Cir. 1990) (citing

Sindona v. Grant, 619 F.2d 167, 174 (2d Cir. 1980); Jhirad v. Ferrandina, 536 F.2d 478 (2d Cir.), cert. denied, 429 U.S. 833 (1976); Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983); Garcia-Guillern v. United States, 450 F.2d 1189, 1192 (5th Cir. 1971), cert. denied, 405 U.S. 989 (1972); Matter of Extradition of Tang Yee-Chun, 674 F. Supp. 1058, 1068–69 (S.D.N.Y. 1987). Considering the same issue in a slightly different context, the Court of Appeals for the District of Columbia Circuit said:

> What we learn from Neely [v. Henkel, 180 U.S. 109 (1901)] is that a surrender of an American citizen by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials.

Holmes v. Laird, 459 F.2d 1211, 1219 (D.C. Cir.), cert. denied, 409 U.S. 869 (1972); accord Pfeifer v. United States Bureau of Prisons, 468 F. Supp. 920 (S.D. Cal. 1979), aff'd, 615 F.2d 873 (9th Cir. 1980). Another court disposed of the issue in the following words:

> Regardless of what constitutional protections are given to persons held for trial in the courts of the United States or of the constituent states thereof, those protections cannot be claimed by an accused whose trial and conviction have been held or are to be held under the laws of another nation, acting according to its traditional processes and within the scope of its authority and jurisdiction.

Gallina v. Fraser, 177 F. Supp. 856, 866 (D. Conn. 1959), aff'd, 278 F.2d 77 (2d Cir. 1960).

F. *Extradition Treaties to Be Liberally Interpreted.*

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 14 (1936); Factor v. Laubenheimer, 290 U.S. 276–93, 301 (1933). In discussing the application of this rule, the District Court for the Southern District of Florida in McElvy v. Civiletti, 523 F. Supp. 42, 47 (S.D. Fla. 1981), wrote that:

> a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations

> between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," Factor v. Laubenheimer, 290 U.S. at 298; In re Chan Kam-Shu, 477 F.2d 333, 338–39 (5th Cir. 1973).

This country does not expect foreign governments to be versed in our criminal laws and procedures. Grin v. Shine, 187 U.S. 181, 184 (1902). Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." Fernandez v. Phillips, 268 U.S. 311, 312 (1925). This approach is mandated by the liberal rules of construction that are to be used in interpreting extradition agreements.

Statements by the United States Department of State as to interpretation of treaties are to be given great weight by our courts. Sayne v. Shipley, 418 F.2d 679, 684 (5th Cir. 1969), cert. denied, 398 U.S. 903 (1970); In re Ryan, 360 F. Supp. at 272, n.4; In re Extradition of D'Amico, 177 F. Supp. 648, 653 n.7 (S.D.N.Y. 1959), appeal dismissed, 286 F.2d 320 (2d Cir.), cert. denied, 364 U.S. 851 (1960).

G. *Fugitive for Extradition Purposes.*

The nature of the fugitive's absence from the country seeking his surrender is immaterial; it is sufficient for purposes of extradition that he be found in the United States. Vardy v. United States, 529 F.2d 404, 407, reh. denied, 533 F.2d 310 (5th Cir. 1976); In Re Chan Kam-Shu, 477 F.2d at 338–39; United States ex rel. Eatessami v. Marasco, 275 F. Supp. at 496.

**CONCLUSION**

Extradition hearings are often characterized as sui generis. See, e.g., Hooker v. Klein, 573 F.2d at 1369. Despite the unusual nature of the proceedings, there is no mystery to the law of extradition: it is regulated by a body of well-settled precedent, much of it originating with the Supreme Court. See Ahmad v. Wigen, 910 F.2d at 1065. Although other elements must also be present, the paramount issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crimes charged in the requesting country. The latter determination is the kind that courts make in a preliminary hearing under Federal Rule of Criminal Procedure Rule 5.1. Ward v. Rutherford, supra. The extradition hearing must not be converted into a trial on the merits, and the rules ordinarily applicable in such trials are not used. The extraditee's opportunities to oppose the request are limited because his defenses will be aired in the requesting country. This Court's findings of fact and conclusions of law should deal with each of the elements listed above, and with each offense for which extradition is requested. This Court should not consider any evidence presented or arguments made which depart from these long-recognized standards.

DATED: August 12, 2008

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

CHRISTINE Y. WONG
Assistant United States Attorney