

1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney

2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  CHRISTINE Y. WONG (NYBN 3988607)
   Assistant United States Attorney

5
       1301 Clay Street, Suite 340-S
6      Oakland, California 94612-5217
       Telephone:  (510) 637-3717
7      Facsimile:  (510) 637-3724
       E-Mail:     Christine.Wong@usdoj.gov

8

9



**FILED**
AUG 1 2 2008
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

10                      UNITED STATES DISTRICT COURT

11                     NORTHERN DISTRICT OF CALIFORNIA

12                             OAKLAND DIVISION

13  IN THE MATTER OF THE            )    No. CR 08-90359 MISC (WDB)
    THE EXTRADITION OF HELEN YUEN-  )
14  LAN LAU                         )    UNITED STATES' MEMORANDUM RE:
                                    )    AVAILABILITY OF BAIL
    _____ )

15

16         The United States hereby files this memorandum regarding the availability of bail in this

17  matter.  As set forth in more detail below, bail is available in extradition matters only in "special

18  circumstances."  The United States is not aware that any such special circumstances exist here.

19                          **FACTUAL BACKGROUND**

20         This case involves the request by the Government of the Hong Kong Special

21  Administrative Region of the People's Republic of China ("Hong Kong")  to the United States

22  for the extradition of Helen Yuen-Lan Lau.  The charges for which Hong Kong seeks extradition

23  are theft and fraud.  The case is of importance to the Government of Hong Kong and bears on the

24  United States' foreign policy interests, specifically, its ability to comply with its obligations

25  under the outstanding extradition treaty with Hong Kong.

26  **A.      Charges Pending Against Lau in Hong Kong.**

27         According to the information provided by Hong Kong, Helen Yuen-Lan Lau is charged in

28  Hong Kong with theft, in accordance with Section 9 of the Theft Ordinance, Chapter 210, Laws

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)

Document No.

District Court
Criminal Case Processing

1   of Hong Kong (the "Theft Ordinance"), and an alternative charge of fraud, in accordance with

2   Section 16A of the Theft Ordinance.  On March 8, 2008, a magistrate, which is a judicial officer,

3   for the Eastern Magistracy of Hong Kong issued an arrest warrant for the arrest of HELENA

4   YUEN-LAN LAU bearing writ number AW21/07.

5   **B.    The Facts of the Case.**

6          As set forth in Hong Kong's formal request for the extradition of HELENA YUEN-LAN

7   LAU, according to Christopher Mark Quinton Rampton, HELENA YUEN-LAN LAU worked as

8   Rampton's personal secretary from December 1991 to January 2002.  From January 2002 up to

9   and including March 2003, HELENA YUEN-LAN LAU assisted Rampton in an informal

10  capacity.  Since 1995, HELENA YUEN-LAN LAU was authorized by Rampton to withdraw

11  money directly from the personal account of Rampton according to his instructions during his

12  absences from Hong Kong so that Rampton's financial obligations could be settled in time.  The

13  signature of Rampton would be provided to the bank subsequently upon his return to Hong

14  Kong.  After Rampton left Hong Kong in November 2002, HELENA YUEN-LAN LAU allowed

15  Rampton to use her home address as a correspondence address and offered to forward his mail,

16  including bank statements to him.  In March 2003, Rampton discovered that HELENA YUEN-

17  LAN LAU had withdrawn money from his accounts without his authorization during the period

18  from December 1998 to March 2003.  The total amount that HELENA YUEN-LAN LAU

19  withdrew without his knowledge was about HK$7.5 million.  Upon this discovery, Rampton

20  telephoned HELENA YUEN-LAN LAU, who admitted that she had withdrawn the money from

21  Rampton's bank account in order to pay her gambling debts.  She agreed to pay back Rampton

22  HK$2 million, but failed to do so.

23         Fraud and theft are extraditable offenses under Article 2 of the Agreement between the

24  Government of the United States of America and the Government of Hong Kong for the

25  Surrender of Fugitive Offenders.

26                                              **DISCUSSION**

27  **A.    Standards Governing Bail in Extradition Proceedings.**

28         It is well established that bail is not generally available in extradition cases and that, if

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)            -2-

1   bail is granted, it should only be when "special circumstances" exist. As set forth in more detail

2   below, "[u]nlike the situation for domestic crimes, there is no presumption favoring bail [in

3   international extradition]. The reverse is rather the case." <u>Matter of Extradition of Russell</u>, 805

4   F.2d 1215, 1216 (5th Cir. 1986) (quoting <u>Beaulieu v. Hartigan</u>, 554 F.2d 1, 2 (1st Cir. 1977)); <u>see</u>

5   <u>also</u> <u>Matter of Requested Extradition of Kirby</u>, 106 F.3d 855, 858 (9th Cir. 1997) ("As the United

6   States points out, this presumption against bail [in extradition proceedings] is contrary to the

7   presumption that favors bail in domestic prosecutions.") (citation omitted).

8          1.     <u>No Constitutional or Statutory Right to Bail.</u>

9          There is no constitutional or statutory right to bail in extradition proceedings. As an

10   initial matter, the Eighth Amendment to the Constitution requires only that bail, if granted, not be

11   excessive.[1] Further, the Bail Reform Act and decisions involving pre-trial release apply only to

12   criminal cases. <u>In re Extradition of Mironescu</u>, 296 F. Supp.2d 632, 634 (M.D.N.C. 2003)

13   ("Because an international extradition proceeding is not a criminal case, the Bail Reform

14   Act . . . does not apply.").

15          2.     <u>International Considerations Generally Counsel Against Granting Bail.</u>

16          Although bail in extradition proceedings involves some of the same considerations as in

17   ordinary criminal cases, it differs in one extremely significant respect: the international

18   implications of a failure to deliver a fugitive. <u>In re Extradition of Molnar</u>, 182 F. Supp.2d 684,

19   686–87 (N.D. Ill. 2002). The reason for distinguishing granting release in extradition cases from

20   federal criminal cases is that extradition cases involve an overriding interest in meeting treaty

21   obligations. "As one court has put it, "[i]f the United States were to release a foreign fugitive

22   pending extradition and the defendant absconded, the resulting diplomatic embarrassment would

23   have an effect on foreign relations and the ability of the United States to obtain extradition of its

24   fugitives." <u>United States v. Taitz</u>, 130 F.R.D. 442, 444 (S.D. Cal. 1990) (citation omitted).

25          Simply put, the international legal system depends wholly on the respect of its members

26

27          [1]A related claim, based on an asserted due process right to bail by aliens in deportation
proceedings, has been rejected by a New York court. <u>See</u> <u>Doherty v. Thornburgh</u>, 750 F. Supp.

28   131, 135–38 (S.D.N.Y. 1990) (analyzing the concept and discussing the cases).

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)          -3-

1   for the obligations into which they freely enter.  The axiom <u>pacta sunt servanda</u> — treaties must

2   be obeyed — is thus the heart of the system.  A nation that fails to perform a duty mandated by a

3   treaty can justly be accused of subverting the system and may find itself receiving reciprocal

4   treatment from its treaty partner.

5        Extradition treaties are written so that delivery of fugitives by the United States pursuant

6   to an extradition request is not optional: if the requesting state meets the conditions specified in

7   the treaty, the United States is obliged to deliver the fugitive.  This obligation cannot be fulfilled

8   if the fugitive skips bail after being released from custody.  In forums throughout the world, the

9   United States vigorously advocates extradition as a means to combat all forms of serious

10  lawlessness.[2]  Thus, the United States' ability to deliver fugitives pursuant to extradition requests

11  is subject to special scrutiny worldwide and is of great importance to our national interest.[3]

12       Given the potentially serious consequences on the foreign relations of the United States

13  and the inherent unreliability of fleeing felons, most courts will not grant bail to fugitives absent

14  special circumstances.  <u>See</u> <u>United States v. Williams</u>, 611 F.2d 914, 914–15 (1st Cir. 1979).

15  Some courts characterize this reluctance as a presumption against bail for fugitives.  <u>See, e.g.</u>,

16  <u>United States v. Messina</u>, 566 F. Supp.740, 742 (S.D.N.Y. 1983).  Whatever the name of the

17  policy, it derives from a single source: the conviction that the interest of the United States in

18  living up to its treaty obligations, coupled with the risk of flight inherent in all extradition cases,

19  outweighs any factors that might be advanced in favor of release in all but the most unusual

20  cases. As set forth in more detail in the next section, even if a fugitive is not considered a flight

21  risk by the United States, the fugitive must establish the existence of "special circumstances" that

22  would warrant his release.  <u>Molnar</u>, 182 F. Supp.2d at 686 (<u>citing</u> <u>Salerno v. United States</u>, 878

23

24       _____

25       [2]U.S. domestic law nevertheless recognizes an exception under which the Secretary of
    State may deny extradition for compelling reasons even when the treaty's conditions have been
26  fulfilled.  <u>See</u> <u>Escobedo v. United States</u>, 623 F.2d 1098,1105 n.20 (5th Cir. 1980).

27       [3]Indeed, Hong Kong recently agreed to extradite a number of reputed "drug lords" to the
    United States.  <u>See</u> Hector Tobar, <u>Extraditions make a point</u>, L.A. Times, 1/21/07, at 4, available
28  on Westlaw at 2007 WNLR 1188173.

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)          -4-

1   F.2d 317 (9th Cir. 1989)).

2       3.   "Special Circumstances" are Required for a Fugitive to be Released on Bail.

3       The general unavailability of release in extradition cases has been authoritatively settled

4   by the United States Supreme Court since 1903. In Wright v. Henkel, 190 U.S. 40, 63 (1903),

5   the Supreme Court held:

6       Not only is there no statute providing for admission to bail in cases of foreign
        extradition, but § 5270 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 3591),

7       is inconsistent with its allowance after committal, for it is there provided that, if
        he finds the evidence sufficient, the commissioner or judge "shall issue his

8       warrant for the commitment of the person so charged to the proper jail, there to
        remain until such surrender shall be made."

9                                    * * *

10

11      The demanding government, when it has done all that the treaty and the
        law require it to do, is entitled to the delivery of the accused on the issue of the

12      proper warrant, and the other government is under obligation to make the
        surrender; an obligation which it might be impossible to fulfil if release on bail

13      were permitted. The enforcement of the bond, if forfeited, would hardly meet the
        international demand; and the regaining of the custody of the accused obviously

14      would be surrounded with serious embarrassment. And the same reasons which
        induced the language used in the statute would seem generally applicable to

15      release pending examination.

16  Id. at 61–62; see also Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989) ("There is a

17  presumption against bail in an extradition case and only 'special circumstances' will justify

18  bail.") (quoting Wright v. Henkel, 190 U.S. 40, 63 (1903)); see also Kirby, 106 F.3d at 858

19  (same). "Special circumstances" are "'only [] the most pressing circumstances, and when the

20  requirements of justice are absolutely peremptory.'" United States v. Leitner, 784 F.2d 159, 160

21  (2[d] Cir. 1986) (quoting In re Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (L. Hand, J.)). Despite

22  the age of the Wright decision, it still provides the standard for admission to bail pending

23  extradition. Even though laws have been updated and procedures re-codified since 1903, see 18

24  U.S.C. § 3181 et seq., there still is no statute that admits an extraditee to bail, and the

25  requirement of a showing of "special circumstances" is still mandated by Wright and its progeny.

26      The "special circumstances" doctrine creates a presumption contrary to the presumption

27  operating in domestic prosecutions, where, as noted above, pre-trial bail is the favored course.

28  Beaulieu, 554 F.2d at 2 ("Unlike the situation for domestic crimes, there is no presumption

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)              -5-

1   favoring bail. The reverse is rather the case."). As noted above, the anti-bail presumption in

2   extradition cases is grounded in the strong foreign policy interests inherent in the extradition

3   relationship between the United States and its treaty partners. If a domestically-charged person is

4   released and flees before trial she thwarts the court's ability to enforce our criminal laws. That

5   potential harm is balanced against her presumption of innocence. In this matter, however, Lau is

6   wanted by the Government of Hong Kong for charges there. Consequently, there is significantly

7   greater potential harm if she flees before her extradition hearing can be held. Lau's flight would

8   defeat Hong Kong's ability to enforce its laws, subject the United States to embarrassment, and

9   damage our foreign policy interests by rendering us unable to meet our treaty obligation to

10   extradite her to Hong Kong. See, e.g., Wright v. Henkel, 190 U.S. at 62; In re Klein, 46 F.2d 85,

11   85 (S.D.N.Y. 1930) (noting the "grave risk of frustrating the efforts of the executive branch of

12   the government to fulfill treaty obligations").[4]

13        Although the case law is somewhat unclear as to what constitutes "special

14   circumstances," it is clear that such "special circumstances" are limited to extraordinarily rare

15   situations, or, in the words of Judge Learned Hand, "the most pressing circumstances and when

16   the requirements of justice are absolutely peremptory." In re Mitchell, 171 F. 289, 289 (S.D.N.Y.

17   1909). On the government's appeal, the Ninth Circuit has underscored the principle that

18   fugitives arrested in connection with foreign extradition requests should be denied bail absent

19   "special circumstances." United States v. Smyth, 976 F.2d 1535, 1535–36 (9th Cir. 1992).

20   _____

21       [4]The continued vitality of the "special circumstances" test has been confirmed in cases
such as Hu Yau-Leung v. Soscia, 649 F.2d 914 (2d Cir.), cert. denied, 454 U.S. 971 (1981). In

22   that case, the Court of Appeals for the Second Circuit held:

23           The government also asks us to review and vacate the district court's grant
of Hu's release on bail. We agree with the government that the standard for

24   release on bail for persons involved in extradition proceedings is a more
demanding standard than that for ordinary accused criminals awaiting trial.

25   Wright v. Henkel, supra, 190 U.S. at 62, 23 S. Ct. at 786; Beaulieu v. Hartigan,
554 F.2d 1 (1st Cir. 1977). We recognize that, because of the treaty obligations of

26   the United States, there is a presumption against bail in the former situation, and
only "special circumstances" will justify bail. Wright v. Henkel, supra; United

27   States v. Williams, 611 F.2d 914 (1st Cir. 1979); Beaulieu v. Hartigan, supra; In

28   Re Mitchell, 171 F. 289 (S.D.N.Y. 1909).

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)      -6-

1          Individuals wanted for extradition often cite the need to consult with counsel, gather

2    evidence, and confer with witnesses in preparation for their hearing as facts supporting a "special

3    circumstances" finding.  However, these needs do not support a motion for release as they are

4    "important" but "not extraordinary," since "all incarcerated defendants need to do these things."

5    <u>United States v. Smyth</u>, 976 F.2d 1535, 1535–36 (9th Cir. 1992); <u>see also</u> <u>Koskotas v. Roche</u>, 931

6    F.2d 169, 175 (1st Cir. 1991) (need to assist in preparation of defense insufficient to justify

7    release).  Other factors that do not amount to "special circumstances" include:  (1) an

8    unblemished record and the ability to post a significant bond; (2) the fugitive being a highly

9    trained doctor available to administer care to the public; (3) the discomfort of sitting in jail; (4)

10   the need to consult with one's attorney about pending civil litigation, the present extradition

11   hearing, and severe financial and emotional hardships; (5) advanced age or infirmity; (6) the need

12   for a special diet; (7) no credit for time served; (8) financial or family hardship; or (9) the

13   complicated nature of extradition proceedings.  <u>Kirby</u>, 106 F.3d at 863; <u>Russell</u>, 805 F.2d at

14   1217; <u>Molnar</u>, 182 F.  Supp.2d at 688.

15         Courts have found special circumstances to exist where fugitives have shown a high

16   probability of their success in the extradition hearing, a serious deterioration of health, an

17   unusual delay in the proceedings, reason to believe the charges cannot be supported under the

18   Treaty, the availability of bail for a crime charged in the requesting country, and a combination of

19   other factors (including the general "uniqueness" of a case).  <u>Molnar</u>, 182 F. Supp. 688–89;

20   <u>Kirby</u>, 106 F.3d at 864–65.

21

22

23

24

25

26

27

28

1

## CONCLUSION

2         For all of the reasons set forth above, the United States will respectfully request that this

3  Court deny any motion made by Lau for release.

4  DATED: August 12, 2008                          Respectfully submitted,

5                                                   JOSEPH P. RUSSONIELLO
                                                    United States Attorney
6

7

8                                                   CHRISTINE Y. WONG
                                                    Assistant United States Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

USA'S MEMORANDUM RE: BAIL
CR 08-90350 MISC (WDB)                    -8-