JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

CHRISTINE Y. WONG (NYBN 3988607)
Assistant United States Attorney

1301 Clay Street, Suite 340-S
Oakland, California 94612-5217
Telephone:  (510) 637-3717
Facsimile:  (510) 637-3724
E-Mail:     Christine.Wong@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE THE EXTRADITION OF HELEN YUEN-LAN LAU | No. CR 08-90359 MISC (CW) <br><br> UNITED STATES' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE ON BOND <br><br> Hearing: September 9, 2008 <br> Time: 10:00 a.m. |

The Government hereby files this memorandum in opposition to defendant's motion for release on bond. Under Ninth Circuit law, the bail may be granted in extradition cases only upon a showing of "special circumstances." None of the defendant's arguments constitute "special circumstances" justifying bail.

**FACTUAL BACKGROUND**

The Government set forth the factual background of this case in its Memorandum Regarding Availability of Bail ("Bail Memorandum"), filed on August 12, 2008. As such, the Government largely will not repeat the information in this section. A few facts bear emphasis, however. Lau had been employed by Jardine Fleming Holdings ("JFH") from December 1991 to January 2002. See Diplomatic Request, Affirmation of Ng Chat ("Chat Aff.") ¶ 5. During that period, Lau served as the personal secretary to the victim, Christopher Mark Quinton Rampton.

USA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION RE: BAIL
CR 08-90350 MISC (CW)

1 Id. Rampton resigned from JFH on January 1, 2002, but Lau continued to assist Rampton in an
2 informal capacity. Id. at ¶ 6. Rampton left Hong Kong in November 2002; Lau continued to
3 reside there. Rampton entrusted Lau with handling his personal financial affairs while he was
4 away from Hong Kong. Id. at ¶ 17. On March 12, 2003, while he was in Europe, Rampton
5 learned from his bank that there were suspicious transactions conducted from his account. Id. at
6 ¶ 24. Rampton immediately called Lau and asked for an explanation of the suspicious
7 transactions. Id. at ¶ 29. Lau admitted that she had stolen money from Rampton's personal bank
8 account because she had "incurred gambling debts and that some loan sharks were chasing after
9 her," proposed to repay him HK$2,000,000, and asked him not to pursue the matter further. Id.
10 at ¶ 30. The next day, Rampton spoke with Lau again. Lau made additional promises about
11 repaying him HK$2,000,000. Id. at ¶ 31. From March 14, 2003 to March 17, 2003, Rampton
12 tried to contact Lau, but to no avail. Rampton was told that Lau was in the hospital. Id. at ¶ 34.
13 On March 19, 2003, Rampton learned that Lau's mobile phone was switched off, and shortly
14 after, he reported the matter to the police. Id. at ¶ 35. After having lived in Hong Kong at least
15 since January 1989, when her Hong Kong identity card was issued (see Chat Aff., Annex B), Lau
16 left Hong Kong for United States--never to return--days after she was confronted by Rampton
17 with stealing from him.

## DISCUSSION

**A.    The Standard Governing Bail in Extradition Proceedings is "Special Circumstances."**

As the Government set forth in its Bail Memorandum, it is well-settled law that there is a presumption against bail in an extradition case, and only "special circumstances" will justify bail. See Matter of Requested Extradition of Kirby, 106 F.3d 855, 858 (9th Cir. 1997) ("As the United States points out, this presumption against bail [in extradition proceedings] is contrary to the presumption that favors bail in domestic prosecutions.") (citation omitted). Lau cites to Parretti v. United States, 122 F.3d 758 (9th Cir. 1997) ("Parretti I"), in arguing that where the defendant does not pose a flight risk, there need not be a showing of "special circumstances." Parretti I is not controlling authority in this Circuit, as the decision was withdrawn pending an en banc

USA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION RE: BAIL
CR 08-90350 MISC (CW)                    -2-

1  review. While the appeal en banc was pending, the defendant was released pursuant to Parretti I,
2  and he fled the United States. Parretti v. United States, 143 F.3d 508 (9th Cir. 1998) ("Parretti
3  II"). Accordingly, the Court dismissed the appeal. As such, no case since Parretti I and Parretti
4  II has cited to Parretti I as supporting authority for any proposition, much less to support the
5  change in well-settled law that the defendant is advocating. Indeed, the factual circumstances in
6  Parretti I and Parretti II, namely the defendant's flight from the United States, underscores the
7  inherent risks in releasing extraditees absent "special circumstances."

**B. Lau does not meet the "special circumstances" standard and poses a risk of flight.**

9  Lau argues that there are two "special circumstances" that justify her release on bail.
10 Neither is persuasive. Moreover, given the circumstances of Lau's departure from Hong Kong,
11 she does, in fact, pose a risk of flight.
12 First, Lau argues that "special circumstances" exist because she would be able to request
13 bail in Hong Kong and would likely to be released pre-trial for the same offense here. Lau cites
14 two cases, Matter of Extradition of Nacif-Borge, 829 F. Supp. 1210 (D. Nev. 1993) and In re
15 Sacirbergovic, No. 03 Crim. Misc. 01 P. 19, 2004 WL 1490219 (S.D.N.Y. July 6, 2004), in
16 support of her position. Both cases can be distinguished on their facts. The defendant in Nacif-
17 Borge was a Mexican citizen, living in Mexico, who was a frequent visitor to the United States.
18 829 F. Supp. at 1213. At the time that he was traveling to the United States for vacation,
19 Mexican authorities issued a warrant for his arrest. United States Marshals then executed a
20 provisional arrest warrant pursuant to the extradition treaty between Mexico and the United
21 States. Id. Nacif-Borge submitted an favorable legal opinion from an attorney in Mexico stating
22 that Nacif-Borge would likely receive bail if arrested in Mexico. In Sacirbergovic, there was no
23 evidence that the defendant fled the requesting state to evade prosecution. In addition, the
24 chairman of the Council of Ministers, which serves as the "head of government" of Bosnia and
25 Herzegovina, the requesting state, submitted a letter in support of the defendant's bail request.
26 Id. at *2.
27 Here, Lau was a long time, continuous resident of Hong Kong who left her place of
28 residence shortly after her crime was discovered, never to return there. Surely it cannot be

USA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION RE: BAIL
CR 08-90350 MISC (CW)                    -3-

1   coincidental that Lau left Hong Kong immediately after her crime was discovered.  Indeed, the
2   only reasonable inference that can be drawn is that Lau left Hong Kong to evade prosecution.
3   Accordingly, Hong Kong authorities have advised the Government that while the crimes charged
4   are bailable offenses, they do not believe that Lau will receive bail given what they consider to be
5   evidence of flight.  To that end, and quite contrary to the facts in Sacirbergovic, the Hong Kong
6   authorities have specifically requested that the Government oppose bail in this case.

7   Lau further argues that if she committed the crime here, she would likely receive bail.
8   The argument ignores the circumstances surrounding her departure from Hong Kong.  The proper
9   question is whether Lau would receive bail if she committed the crime here and subsequently
10  fled to a foreign country.  Given those circumstances, it is unlikely that she would receive bail
11  here.

12  Lau then argues that Hong Kong's delay in seeking her extradition is a special
13  circumstance, citing two cases, United States v. Wroclawski, No. 07-00302M, 2008 WL
14  2351041 (D. Ariz. June 5, 2008) and In re Extradition of Chapman, 459 F. Supp. 2d 1024 (D.
15  Haw. 2006), in support.  Again, the facts of both cases are distinguishable.  In Wroclawski, the
16  court found that a combination of factors supported a finding of "special circumstances," none of
17  which are present here. Among those factors were that the defendant was needed in the United
18  States to train athletes for the upcoming Olympics, the Polish government did not seek the
19  extradition warrant until nearly 11 years after the case was filed, and there appeared to be a
20  statute of limitations problem with the charge.  Id. at *5.  In this case, the Hong Kong
21  government issued a warrant for Lau's arrest in March 2007, and requested Lau's extradition
22  approximately one year after the case was filed after receiving intelligence that Lau was residing
23  in Alameda, California.  See Chat Aff., ¶¶ 64-65.  As such, the delay in seeking extradition is not
24  particularly long, and the need to seek extradition is, in fact, due to Lau's flight from the Hong
25  Kong.  As such, Hong Kong should not be blamed for the delay.  Moreover, unlike Wroclawski,
26  Lau provides no unique service to the United States, nor is there a statute of limitations problem
27  with the charges against her.
28  In Chapman, defendants are bail bondsmen and residents of Hawaii, charged with false

USA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION RE: BAIL
CR 08-90350 MISC (CW)                -4-

1  imprisonment by Mexican authorities. Id. at 1025. The charges arose from defendants' capture
2  of an American fugitive in Mexico. Although the fugitive was deported to the United States
3  where he was then imprisoned, Mexico issued a warrant for the defendants' arrest, and three
4  years later, requested the extradition of the defendants. Id. As the court noted, the defendants are
5  featured in a cable television program that airs three times a week on the cable channel A&E. Id.
6  at 1024. Given their status as "visible-well known public figures who could not easily go into
7  hiding," among other reasons, the court found that they were not a risk of flight. Id. at 1027. Lau
8  has no such status as a public figure, and again, given the circumstances of Lau's flight from
9  Hong Kong, she does pose a risk of flight, and should be detained while the extradition
10 proceedings are pending.

## **CONCLUSION**

For all of the reasons set forth above, the United States will respectfully request that this Court deny Lau's motion for release.

DATED: September 5, 2008             Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/S/_____
CHRISTINE Y. WONG
Assistant United States Attorney

USA'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION RE: BAIL
CR 08-90350 MISC (CW)                -6-